### Barrett *v.* School District No. 2, in Bow.

Board furnished to the teacher of a public school, under a contract with the prudential committee of the district to provide him with board, constitutes a charge upon the school money, coming to the hands of the committee, and payment by him of the account for the board out of the fund, though made after his term of office had expired, but before the district or his successor in office had made demand upon him for the money, extinguishes the claim against the district for the board.

Assumpsit, for board of the teacher of the public school in said district in the winter of 1855–6.

It appeared in evidence that Ebenezer Lord was chosen prudential committee of the district in March, 1855, and acted in that capacity during the year ensuing his election; that he hired a teacher for the winter school in that year, employed the plaintiff to board him, and agreed to pay him therefor, and that the plaintiff boarded the teacher, as charged in the account in suit. It further appeared that the prudential committee neglected to call the annual meeting of the district in March, 1856, and that the selectmen of the town, on petition therefor, appointed another person prudential committee of the district for the year 1856–7. Other facts appeared, bearing upon the question of the legality of this appointment, but they are unnecessary to be stated. At the time of the appointment of another person as his successor, Lord had in his hands, as prudential committee, money of the district to an amount greater than the plaintiff's account for the board of the teacher, and he subsequently paid over to the plaintiff, out of this money, the amount of his account. The district afterwards brought an action against Lord for the money which, at the time of the appointment of his successor, he had in his hands, and Lord paid over the whole amount to the district before the return day of the writ. There was evidence tending to show that the plaintiff paid back to Lord the amount which he had received of him on account of the board. The court instructed the jury that the plaintiff was entitled to recover, if the money was paid by Lord to him on account of the board, after the appointment of a successor in the office of prudential committee, and the district had repudiated the payment by claiming and receiving from Lord the whole amount of their money in his hands; and that if the plaintiff had not paid back to Lord the money received on account of the board, the action might be maintained in his name for the benefit of Lord; if it had been paid back, for his own benefit; to which instructions the defend-

ants excepted. Other questions were raised by the case, which need not be stated.

*Rolfe & Marshall*, for the defendants.

The prudential committee has authority to hire teachers, provide for their board, furnish fuel, &c., but it is all done on the credit of the school money, and not on the credit of the district. *Giles* v. *School District in Sanbornton*, 31 N. H. (11 Foster) 310, and cases cited.

The payment by Lord to the plaintiff cancelled the debt and extinguished all claim against the district.

*Minot & Mugridge*, for the plaintiff.

The prudential committee can legally contract so as to bind the district for the board of a teacher.

The statute makes it his duty to hire teachers and provide board for them. Comp. Stat., chap. 24, sec 12. He may therefore lawfully contract for the board, and thereby bind the district. Comp Stat., chap 77, sec. 10.

*Giles* v. *School Dist.*, 31 N. H. (11 Foster) 312, is not an authority against the plaintiff. In that case the court say that the district might be bound to the party with whom the committee contracts, but the principle established in that case would apply to the claim of the committee against the district. This suit is brought by the party, and not by the committee. Besides, the case finds that the contract made with the plaintiff did not extend beyond the means in his hands applicable for that purpose.

This suit has been rendered necessary by the district's claiming from Lord the funds in his hands, and thus preventing him from paying the claims. They have recovered the money out of his hands, on a suit brought upon the ground that he was not prudential committee, and therefore had no right to use their funds in payment of debts outstanding against them. They cannot be permitted to say, after thus repudiating the payment, that the debt against them does not exist.

SAWYER, J.  It must be understood that the money in the hands of Lord belonging to the district, at the time of the appointment of another person as prudential committee, was money assigned to the district out of the money appropriated by law for the support of public schools. No other money could come to his hands belonging to the district, by virtue of his office as prudential committee. The money so appropriated by law constitutes the fund from which the ordinary expenses of the schools are to be defrayed. By the provisions of sec. 3, chap. 72, Rev. Stat., p. 148, it is expressly devoted to the sole purpose of keeping common schools, including the purchase of necessary fuel and occasional repairs, as specified in the title of the Revised Statutes in which this chapter is included—being title XI., relating to public instruction. The specification referred to is found in sec. 10, chap. 70, which declares that it shall be the duty of the prudential committee to select and hire teachers, provide for their board, furnish necessary fuel, make such occasional repairs in the school house and furniture as may be necessary, &c. By sec. 4, ch. 72, the selectmen are directed to assign to each district its proportion of the school money, and pay over the same to the prudential committee. The statute further provides, in case the selectmen shall neglect to assess or pay over the money which by law should be so assigned, that an action of debt may be maintained against them by the committee in the name of the district for the recovery of the money, and subjects the committee to a penalty for its misapplication. Secs. 5 and 6, chap. 72. These provisions of the statute clearly recognize the money in the hands of the committee as his in law, and not the money of the district. It is to be applied by him for the benefit of the inhabitants of the district, and of the community generally, in promoting public instruction. It is, therefore, his only, in the qualified sense that the money of an estate, in the hands of an administrator, is

his.  A right of action is given to him to obtain posses-
sion of it, which, though in the name of the district, can-
not be released or controlled by them.  He is under a per-
sonal responsibility for its proper application to the pur-
poses to which it is appropriated by law, and it is de-
clared to be his official duty to see that those objects
are effected.  These are clearly sufficient grounds for hold-
ing the money in his hands to be his in law instead of
the district's.  *Tolman* v. *Marlborough,* 3 N. H. 57.  And
it constitutes in his hands a fund raised by law for public
purposes, and devoted exclusively to the purposes specified,
upon considerations of a public character.

When Lord agreed with the plaintiff for the board of
the teacher, it was done in the performance of his official
duty, and must be understood to have been done upon the
credit of the fund given to him by law for that purpose.
This creates a charge upon the fund for the payment of
the board.  It had also the effect, under the statute, to
subject the district to liability for it, at the suit of the
party furnishing it, in case the fund should be misapplied
and the charge created upon it left undischarged.  Rev.
Stat., chap. 73, sec. 10.  But this remedy by suit against
the district is given for the greater security of the party,
and is incidental to the charge upon the fund.  When
this is extinguished by the application of the fund, *pro
tanto,* to liquidate it, the claim against the district is, *ipso
facto,* extinguished.  If, when the committee goes out of
office, he holds the funds subject to no charge which by
his contract has been created upon them, it is obviously
his duty to pay them over to his successor in office, and
for his neglect to do so he may undoubtedly be held to
answer, either to the district or to his successor.  But
when at the expiration of his term of office such a charge
exists, it may well be questioned whether he has not the
right, even against the demand of the district, or of his
successor, to withhold so much of the fund as may be

necessary to cancel the charge which his contract has created. If, retaining the money in his hands for that purpose, he should fail to apply it to extinguish the claim, and by reason of his neglect the district should be subjected to a suit for its recovery, it would constitute a misapplication of the money, rendering him liable to the penalty. It is unnecessary to go to this extent in this case. Here the money was applied to the extinguishment of the charge, before any proceeding had by the district or his successor to take it out of his hands. It was the rightful application of the money to the extinguishment of a charge existing against the fund, by the person who, until it was demanded of him, had the right, and whose duty it was so to apply it. No demand had been made upon him for the money before it was so applied, and neither the district nor his successor had the right, after it was thus applied to its legal purposes, to call upon him for the money. The claim against the district was thereby extinguished, and could not be revived by any subsequent proceedings. The exception must be sustained, the judgment vacated, and the

*Verdict set aside.*